Erin Rose Ronstadt, SBN 028362
Kyle Shelton, SBN 027379
SANDSTONE LAW GROUP
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@sandstonelawgroup.com
kyle@sandstonelawgroup.com
*Attorneys for Plaintiff*

**SANDSTONE LAW GROUP**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David Duran,<br><br>Plaintiff,<br>v.<br><br>The Lincoln National Life Insurance Company, plan insurer and administrator; Wells Fargo & Company Long-Term Disability Plan, an ERISA benefit plan; and Wells Fargo & Company, plan sponsor and fiduciary,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

For his claims against The Lincoln National Life Insurance. Company, plan insurer and administrator ("Lincoln"), Wells Fargo & Company Long-Term Disability Plan, an ERISA benefit plan (the "Plan"), and Wells Fargo & Company, plan sponsor and fiduciary ("Wells Fargo"), Plaintiff David Duran ("Mr. Duran" or "Plaintiff") alleges as follows:

**PARTIES, VENUE, AND JURISDICTION**

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2. As an employee of Wells Fargo, Mr. Duran was a participant of the Wells Fargo & Company Long-Term Disability Plan (the "Plan").

3. Wells Fargo is a California company headquartered in San Francisco, California.

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

4. The Plan is a purported ERISA benefit plan established and maintained by Wells Fargo for the benefit of its employees.

5. Lincoln is a third-party claims administrator for the Plan for short-term disability ("STD") and long-term disability ("LTD") benefits.

6. Lincoln fully insures Wells Fargo employees for long-term disability ("LTD") benefits pursuant to Policy Number GF3-850-289424-01 ("the Policy").

7. Wells Fargo is a Plan fiduciary as defined by ERISA.

8. At the time Mr. Duran sought LTD benefits under the Plan, Lincoln administered claims for Wells Fargo under the Plan, acted on behalf of the Plan, and acted as an agent of Wells Fargo and/or the Plan.

9. Lincoln makes final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

10. Lincoln has a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

11. Mr. Duran currently resides in Pinal County, Arizona and has been a resident of Arizona at all times since becoming a Plan participant and is a citizen of the United States of America.

12. Lincoln has its principal place of business in the state of Pennsylvania. Lincoln is a citizen of Pennsylvania.

13. Lincoln is licensed and authorized to do business in Pinal County, Arizona.

14. Lincoln resides and is found in Pinal County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1391.

15. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

16. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

## GENERAL ALLEGATIONS

17. Mr. Duran suffers from multiple serious medical conditions, including anti-NMDA receptor encephalitis, seizure disorder, cognitive deficits, severe fatigue, sleep apnea, bradycardia, hypertension, hypothyroidism, rheumatoid arthritis, sensorineural hearing loss, left lower extremity weakness and sensory loss, hip osteoarthritis (status-post total hip replacement), and cervical spine degenerative changes. These conditions cause profound cognitive and physical impairments, including memory loss, concentration deficits, facial twitching, speech difficulties, impaired gait and mobility, and overwhelming fatigue that requires daily rest.

18. Collectively, Mr. Duran's conditions prevent him from performing the material and substantial duties of either his Own Occupation or Any Occupation as those terms are defined in the Plan.

19. Mr. Duran has been under the regular care of multiple physicians, including neurologist Dr. Aimee Borazanci, primary care physician Dr. Jason Cheng, and other specialists in cardiology, gastroenterology, orthopedics, and pulmonary medicine.

20. Mr. Duran became Disabled in April 2021, when he was hospitalized for anti-NMDA receptor encephalitis, while insured under the Policy.

21. Following his hospitalization, Mr. Duran experienced persistent and worsening symptoms, including seizures, cognitive deficits, memory loss, impaired concentration, severe fatigue requiring daily rest, facial twitching, speech difficulties, left leg weakness and sensory loss, impaired gait and balance, and hearing loss. These conditions collectively prevent him from performing the material and substantial duties of either his Own Occupation or Any Occupation.

22. Mr. Duran applied for and was approved for LTD benefits under the Plan.

23. Lincoln initially approved Mr. Duran's claim for LTD benefits and paid benefits beyond the 24-month "own occupation" period, acknowledging his inability to perform Any Occupation.

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

24. To be eligible for LTD benefits, Mr. Duran must meet the Policy's definition of "Disabled." Under the Policy: i. During the Elimination Period and the next 24 months, Disability means the Covered Person is unable to perform the Material and Substantial Duties of his Own Occupation; and ii. Thereafter, the Covered Person is Disabled if he is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

25. The Policy defines "Own Occupation" as the occupation Mr. Duran was performing when Disability began—in his case, Computer Operations Manager at Wells Fargo, a sedentary, skilled position. The Policy defines "Any Occupation" as any occupation the Covered Person is or becomes reasonably fitted for by training, education, age, and physical and mental capacity.

26. Mr. Duran has at all times remained Disabled from his Own Occupation and Any Occupation, and therefore eligible for LTD benefits.

27. On March 29, 2024, the Social Security Administration issued a Fully Favorable Decision finding Mr. Duran Disabled as of April 2021, based on many of the same medical conditions that support his LTD claim. Despite being aware of this determination, Lincoln failed to meaningfully consider it.

28. On June 29, 2024, Lincoln abruptly terminated Mr. Duran's LTD benefits, alleging he no longer met the Policy's definition of Disability (the "Denial").

29. The Denial occurred after Lincoln attempted to recover a $97,313.80 overpayment from Mr. Duran following his SSDI award.

30. Lincoln's Denial relied on file-only reviews that ignored or minimized the opinions of Mr. Duran's treating providers and disregarded extensive medical and vocational evidence demonstrating he cannot sustain any competitive employment.

31. Lincoln failed to conduct a whole-person analysis and disregarded the SSA's determination, the opinions of treating physicians, and vocational evidence. Instead, Lincoln

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

acted in its own financial interest and deprived Mr. Duran of a full and fair review in violation of 29 C.F.R. § 2560.503-1.

32. On December 23, 2024, Mr. Duran, through counsel, timely appealed the Denial (the "Appeal"). The Appeal included more than one thousand pages of supplemental medical records, treating provider letters, a vocational evaluation, medical literature, and sworn declarations from Mr. Duran and his daughter.

33. The Appeal included a December 11, 2024 letter from Dr. Aimee Borazanci, Mr. Duran's treating neurologist, stating that Mr. Duran was "unable to sustain any type of full-time work," could not maintain regular attendance, and suffered from severe fatigue, seizures, cognitive deficits, and mobility impairments.

34. The Appeal also included a December 17, 2024 letter from Dr. Jason Cheng, Mr. Duran's long-time primary care physician, confirming that Mr. Duran was unable to work due to multiple disabling conditions, including anti-NMDA receptor encephalitis, seizures, bradycardia, hearing loss, fatigue, and left leg weakness. Dr. Cheng opined that Mr. Duran had neither the mental nor physical stamina to complete a full workday and was unlikely ever to return to work in any capacity.

35. The Appeal further included a vocational evaluation concluding that Mr. Duran could not perform Any Occupation and that competitive employment was not feasible given his functional limitations.

36. Instead of giving due weight to this overwhelming evidence, which included the Appeal and SSA determination, Lincoln procured additional adverse paper reviews from Drs. Shadi Yaghi and Lauren Dawson. These consultants never examined Mr. Duran, dismissed or minimized his symptoms, and issued internally inconsistent and selectively reasoned reports.

37. In particular, Dr. Yaghi trivialized Mr. Duran's profound fatigue, asserting that it was not clinically significant, even though Mr. Duran had been prescribed Modafinil and had attempted unsuccessfully to taper off Keppra due to side effects of fatigue and

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

cognitive dulling. Dr. Dawson, in turn, discounted documented cognitive impairments by attributing them to "mood," while simultaneously relying on neuropsychological testing that expressly warned it did not reflect real-world functioning under stress and fatigue.

38. Lincoln's handling of the Appeal violated ERISA's mandate that plan administrators provide a "full and fair review." Rather than grappling with the medical and vocational evidence, Lincoln relied on outcome-driven file reviews that were designed to rationalize denial of the claim.

39. On June 18, 2025, Lincoln issued its final administrative determination, terminating Mr. Duran's LTD benefits (the "Final Denial").

40. In reaching the Final Denial, Lincoln relied heavily on multiple biased and inadequate physician consultant reviews, including reports from Drs. Shadi Yaghi and Lauren Dawson.

41. Lincoln's Final Denial also reflects its structural and financial conflict of interest. Lincoln attempted to collect the $97,313.80 alleged overpayment, despite knowing that Mr. Duran no longer had an equitable means of repayment. This sequence demonstrates that Lincoln prioritized its own financial interests over its fiduciary duty to conduct a fair and impartial review of Mr. Duran's claim.

42. In fact, Lincoln made approximately six (6) attempts to collect the alleged overpayment, including unlawfully sending Mr. Duran to a collection agency.

43. The consultants Lincoln relied upon never physically examined Mr. Duran or spoke with his treating providers. Their opinions were based solely on a paper review of the records, and they disregarded critical evidence of Mr. Duran's cognitive dysfunction, fatigue, seizure disorder, and physical limitations.

44. In its Final Denial, Lincoln failed to explain why it credited these file reviewers over the opinions of Mr. Duran's longtime treating physicians, Drs. Borazanci and Cheng, who had directly examined and treated him for years. Lincoln unreasonably

relied on consultants who conducted fragmented and biased reviews rather than those best situated to evaluate Mr. Duran's condition.

45. Lincoln further failed to explain or address why it dismissed the significant impairments documented by Mr. Duran's providers—including severe fatigue requiring daily rest, seizures, speech difficulties, and mobility deficits—that prevent him from sustaining any competitive employment.

46. A plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." See *Black & Decker Disability v. Nord*, 538 U.S. 822, 834 (2003). Lincoln violated this principle by disregarding reliable and consistent treating provider evidence.

47. Lincoln's reliance on outcome-driven peer reviewers was an abuse of discretion and contrary to its fiduciary duty to perform a full and fair review under ERISA.

48. In the Final Denial, Lincoln also dismissed the vocational report detailing an occupational analysis of Mr. Duran's restrictions and limitations. The evaluator concluded that Mr. Duran could not perform Any Occupation, consistent with the medical evidence. Lincoln improperly rejected this report.

49. The vocational evaluator did not invent restrictions; he relied on the comprehensive medical opinions of Drs. Borazanci and Cheng. Lincoln's reviewers, by contrast, ignored those restrictions entirely, leading to an incomplete and misleading vocational assessment.

50. By rejecting the vocational evaluator's conclusions and misrepresenting Mr. Duran's functional capacity, Lincoln disregarded substantial vocational evidence corroborating his Disability.

51. Mr. Duran is unable to perform the material duties of his Own Occupation, or Any Occupation for that matter, and therefore comes within the definition of Disability under the Policy.

52. Mr. Duran exhausted his administrative remedies and timely filed this lawsuit.

**SANDSTONE LAW GROUP**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendant Lincoln)**

53. All other paragraphs are incorporated by reference.

54. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

55. The Plan is governed by the laws of the State of Minnesota to the extent not preempted by federal law.

56. The Plan represents LTD coverage and a contractual promise to provide these benefits until Mr. Duran is no longer Disabled under the terms of the Plan.

57. Mr. Duran is Disabled from his Own Occupation as a Computer Operations Manager for Wells Fargo, a sedentary, skilled position requiring sustained concentration and cognitive stamina.

58. Mr. Duran properly claimed the LTD benefits to which he is entitled under the Plan.

59. Defendants Lincoln and the Plan wrongfully denied those benefits by issuing the Denial on June 29, 2024, and later the Final Denial on June 18, 2025.

60. Mr. Duran reasonably expected that his medical conditions—including anti-NMDA receptor encephalitis, seizures, cognitive dysfunction, fatigue, and mobility deficits—met the Plan's definition of Disability and that he would receive benefits until at least his Social Security Normal Retirement Age (age 67), or until such time as he was no longer Disabled.

61. Lincoln and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and clearly erroneous.

62. Although the LTD Policy states that Lincoln has discretion with respect to determining eligibility and interpreting the Plan, under ERISA, such discretion exists only if the Plan reserved that authority to the Plan Administrator. While the Plan terms provide a

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

mechanism for delegation of discretion, there is no evidence that such discretion was delegated in accordance with the Plan.

63. On information and belief, there is no written Plan document that reserves discretion to the Plan Administrator or contains valid terms by which discretion could be delegated. Therefore, under ERISA, discretion could not have been delegated to Lincoln.

64. Even if Wells Fargo properly delegated discretionary authority to Lincoln, by operation of Minn. Stat. § 60A.42, the standard of review applicable to this Court's decision concerning Plaintiff's entitlement to LTD benefits is de novo.

65. In light of Lincoln's wholesale and flagrant procedural violations of ERISA, Mr. Duran is also entitled to de novo review. See *Halo v. Yale Health Plan*, 819 F.3d 42, 60–61 (2d Cir. 2016).

66. Instead of evaluating Mr. Duran's eligibility based on Plan language and medical evidence, Lincoln made claims decisions based on its own financial interest and risk exposure.

67. Lincoln failed to conduct a full and fair review of Mr. Duran's claim, in violation of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1.

68. Lincoln did not properly consider all available medical and vocational evidence when issuing the Denial and Final Denial.

69. In reaching the Denial and Final Denial, Lincoln disregarded Mr. Duran's extensive medical evidence, his credible symptomology, the opinions of his treating providers, and the Social Security Administration's Fully Favorable Decision.

70. Lincoln instead relied exclusively on paper reviews from consultants who never examined Mr. Duran, including Drs. Shadi Yaghi and Lauren Dawson, whose reports were outcome-driven, inconsistent, and biased.

71. None of Lincoln's reviewers meaningfully considered Mr. Duran's cognitive impairments, debilitating fatigue, or vocational limitations, despite overwhelming evidence of these conditions.

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

72. On information and belief, Lincoln deliberately used consultants whose recommendations it knew would be unfavorable to the continuation of Mr. Duran's benefits.

73. Lincoln abused its discretion by basing its decision on unreliable and inaccurate information. Even after being confronted with contrary evidence, Lincoln continued to rely on biased peer reviewers.

74. On information and belief, Lincoln provides its consultants with internal notes and financial information about claims, compromising their independence and creating further bias.

75. Lincoln routinely emphasizes information that favors a denial while ignoring or downplaying information supporting disability.

76. Lincoln's biased medical consultants mischaracterized Mr. Duran's medical records to support their conclusion that he could return to work.

77. Lincoln failed to properly consider the opinions of Mr. Duran's treating providers, who are best situated to evaluate his long-term impairments.

78. Lincoln has a documented history of parsimonious claims handling, which is directly relevant to this Court's consideration of the appropriate standard of review and its evaluation of Lincoln's procedural violations.

79. Lincoln's ERISA violations were material, repeated, and more than de minimis.

80. Lincoln failed to engage in a "meaningful dialogue" with Mr. Duran regarding the evidence in his claim.

81. Lincoln engaged in procedural irregularities designed to serve its own financial interests.

82. On information and belief, Lincoln's motivation in terminating Mr. Duran's LTD benefits was to eliminate a significant long-term financial liability.

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

83. Plaintiff is informed and believes that Lincoln continues to face financial stress, including inadequate reserves for the payment of LTD claims.

84. Plaintiff is further informed and believes that Lincoln has increased efforts to deny otherwise valid claims as a result of its financial considerations.

85. Plaintiff is informed and believes that Lincoln did not set aside adequate reserves to pay Mr. Duran's claim.

86. On information and belief, Mr. Duran was a victim of Lincoln's corporate efforts to drive profitability at the expense of disabled claimants.

87. Under the de novo standard of review, Mr. Duran need only prove by a preponderance of the evidence that he is Disabled, which the overwhelming medical, vocational, and governmental evidence establishes.

88. Even under the abuse of discretion standard of review, Lincoln abused its discretion because its decision terminating Mr. Duran's LTD benefits was arbitrary, capricious, and unduly influenced by its financial conflicts of interest. These conflicts precluded the full and fair review required by ERISA.

89. Mr. Duran is entitled to discovery regarding Lincoln's procedural irregularities and structural conflicts of interest, including the financial conflicts of its reviewing physicians, vendors, and claims personnel.

90. Under the de novo standard of review, Mr. Duran is entitled to discovery regarding, among other things, the credibility of Lincoln's medical reviewers and the impact of Lincoln's conflict of interest. See *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007).

91. Pursuant to the coverage provided in the Plan, ERISA, and applicable federal law, Mr. Duran is entitled to recover all benefits due under the Plan and to enforce his rights under the Plan.

SANDSTONE LAW GROUP
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

92. Mr. Duran is also entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his LTD benefits, restoring him to the status quo ante.

93. Mr. Duran is entitled to prejudgment interest on all past-due benefits and damages at the highest legal rate until paid in full.

94. Pursuant to 29 U.S.C. § 1132(g), Mr. Duran is entitled to recover his attorneys' fees and costs incurred herein.

95. Mr. Duran is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid in full.

96. Pursuant to 29 U.S.C. § 1132(g), Mr. Duran is entitled to recover his attorneys' fees and costs incurred herein.

WHEREFORE, on all claims, Mr. Duran asks for entry of judgment against Defendants as set forth in this Complaint, which includes:

A. All past and future LTD benefits under the terms of the Plan;

B. Clarifying and determining Mr. Duran's rights to future benefits under the terms of the Plan;

C. For any other benefits Mr. Duran may be entitled to receive under the Plan due to his disability;

D. All other equitable relief that is proper as a result of Lincoln's breaches of fiduciary duties;

E. For an award of Mr. Duran's attorneys' fees and costs incurred herein under 29 U.S.C. § 1132(g) and A.R.S. §§ 12-341.01 and 12-351;

F. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G. For such and further relief as the Court deems just, equitable, and reasonable.

**SANDSTONE LAW GROUP**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

Dated: October 1, 2025.

SANDSTONE LAW GROUP

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Kyle Shelton
*Counsel for Plaintiff*